NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PNY TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> LORENZO SALHI and SILICON VALLEY SOLUTIONS, INC., <br><br> Defendant. | Hon. Dennis M. Cavanaugh <br><br> **OPINION** <br><br> Civil Action No. 2:12-cv-04916 (DMC)(JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon the motion of Defendants Lorenzo Salhi ("Salhi") and Silicon Valley Services, Inc. ("SVS") (collectively "Defendants") to dismiss or stay the Complaint filed by Plaintiff PNY Technologies, Inc. ("PNY" or "Plaintiff"), or, in the alternative, to dismiss for failure to state a claim for relief pursuant to FED. R. CIV. P. 12(b)(6). (Defs.' Mot. to Dismiss, May 17, 2013, ECF No. 19). Oral arguments were heard in this matter on June 27, 2013. During that hearing, the Court denied the Motion to Dismiss or Stay the Complaint under the first-filed rule for the reasons set forth in the transcript of the proceedings. This Court also orally denied Defendants' Motion to Dismiss under FED. R. CIV. P. 12(b)(6) and has set forth its reasoning herein.

I. **BACKGROUND**

The claims in this action arose out of a relationship between PNY and Salhi and his company, SVS. PNY is a consumer electronics manufacturer and distributer headquartered in New Jersey with an office in San Jose, California, with approximately twenty to thirty employees.

1

(Payne Decl., Ex. A. at ¶ 16). In 2009, Salhi co-founded SVS to supply memory products to large Original Equipment Manufacturing ("OEM") customers. SVS is headquartered in San Jose, California. (Defs.' Mot. to Dismiss Br. (Defs.' Br.") 9, Oct. 2, 2012, ECF No. 8-2).

Initially, the parties discussed a 100 percent acquisition of SVS by PNY. However, the acquisition was abandoned and PNY's President, Chairman, and Chief Executive Office Gadi Cohen ("Cohen") proposed that Salhi and his management team at SVS sign offer letters for employment at PNY. (Defs.' Br. 10). Cohen proposed they enter into an Invoice Agreement whereby PNY would pay three installments of $500,000 to SVS. (Id.). The payments were guaranteed unless Salhi quit, was terminated for cause, or failed to perform his "job duties." (Id.).

The first payment installment was made on August 17, 2011. In February 2012, when another Invoice payment came due, PNY and Cohen allegedly attempted to coerce Salhi into waiving the right to the $500,000 payment. Salhi refused and was terminated from employment. A short time later, Salhi returned the laptop computer provided to him by PNY. (Compl. at ¶57). PNY claims that on information and belief, the laptop contained sensitive, confidential, and proprietary information about PNY's OEM business and that Salhi destroyed or misappropriated this information. (Id.)

On May 22, 2012, Salhi and SVS filed a Complaint rising from the aforementioned transactions in the Superior Court of California, San Mateo County entitled <u>Lorenzo Salhi and Silicon Valley Solutions, Inc. v. PNY Technologies, Inc. (f/k/a P.N.Y. Electronics, Inc.), Gadi Cohen and Phillip Berkowitz, et al</u>, Case No. Civ. 514059. (Defs.' Br. 11). That Complaint asserted causes of action under California law against PNY and its President, CEO and Chairman, Cohen and the Director of Sales at PNY's California office, Berkowitz for: (1) breach of contract;

2

(2) breach of the covenant of good faith and fair dealing; (3) fraud; (4) negligent misrepresentation's; (5) violation of the California Labor Code § 200, et seq.; (6) wrongful termination in violation of public policy; and (7) unjust enrichment. PNY and Cohen filed a demurrer in the California action was filed on July 17, 2012, seeking dismissal of Cohen as an individual defendant and of several of the claims against all defendants.

On August 6, 2012, PNY filed a Complaint in the instant matter in this Court. (ECF No. 1). The Complaint alleges causes of action for 1) breach of contract; 2) fraud; 3) equitable fraud; 4) breach of duty of undivided loyalty; 5) violation of the Federal Computer Fraud and Abuse Act; 6) violation of N.J.S.A. 2A:38-1; 7) breach of the implied covenant of good faith and fair dealing; 8) promissory estoppel; 9) unjust enrichment; and 10) declaratory judgment.

## II. LEGAL STANDARD

In deciding a motion under Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations omitted). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 555.

3

"A complaint will survive a motion to dismiss if it contains sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Id. "Determining whether the allegations in a complaint are 'plausible' is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Young v. Speziale, Civ. No. 07-03129, 2009 WL 3806296, at *3 (D.N.J. Nov. 10, 2009) (quoting Iqbal, 129 S. Ct. at 1950). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1950.

### III. DISCUSSION

Defendants argue, that even given the Court's finding that the first-filed rule is inapplicable, PNY's Complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6). (Defs.' Br. 1). This court finds that PNY has pled with sufficient factual particularity to state a plausible claim to relief.

### A. Fraud Claims

Preliminarily, Defendants argue that PNY fails to allege fraud with the particularity required under FED. R. CIV. P. 9(b). (Defs.' Br. 24). To successfully establish a claim for common law fraud under New Jersey law, a plaintiff must show: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Perry v. Gold & Laine, P.C., 371 F. Supp. 2d 622, 627 (D.N.J. 2005).

4

Rule 9(b) creates a heightened pleading standard, which requires "that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The heightened pleading standard is intended to require a plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Defendants claim that the only facts PNY alleged with sufficient particularity were contained in the July 19, 2011 email from Salhi to Cohen. (Compl. at ¶¶ 22-25). Defendants allege that the Complaint's generalized pleading is insufficient, citing by example, the allegation asserting that during negotiations the parties changed the structure of the deal and adjusted annual revenue forecasts several times. (Compl. at ¶¶ 25-28, 37). However, the Court finds that the Complaint is pled with particularity that exceeds the level argued by the Defendants. PNY's Complaint asserts that "Salhi, acting on behalf of SVS, fraudulently induced PNY to enter into the Invoice Agreement and to hire him and SVS's other employees by making very specific promises to PNY that he had extensive connections in the OEM industry and a capable OEM team in both the flash SSD segments, both of which would lead to immediate and valuable OEM business for PNY. These representations were knowingly false." (Compl. at ¶ 67). While Defendants argue that PNY failed to plead the element of knowledge, the inclusion in the Complaint that "these representations were knowingly false" meets this burden. (Id.).

While Defendants contend that many of the alleged misrepresentations are non-actionable statements of opinion and puffery, the Complaint provides specific examples of allegedly false promises constituting more than merely Salhi's opinions. The Complaint details

5

"[m]isrepresentations made by Defendant Salhi to PNY President Gadi Cohen in July 2011 about SVS's business successes, established relationships with OEM Enterprise customers, the $300 million in new OEM business he could deliver to PNY within 3-5 years, and his ability to overcome PNY's poor relationship with Cisco Systems." (Compl. at ¶¶ 17-19). The Complaint also alleges that PNY justifiably relied on these misrepresentations in entering into the Invoice Agreement and collateral employment agreements to its detriment, paid specified sums to Defendants, and suffered damages as a result. (Compl. at ¶¶ 17-19). Defendants argue that PNY could not have relied on Defendants' alleged misrepresentations because the parties agreed that Salhi would be employed at-will. (Defs.' Br. 30). However, PNY's ability to terminate the employment relationship prior to achieving annual revenue targets does not prove that PNY could not have relied on the alleged misrepresentations in deciding to enter into the Invoice Agreement and collateral employment agreements. Therefore, the Complaint makes a sufficient showing of reliance.

Rule 9(b) "merely requires that 'circumstances' of the alleged fraud be pled with enough specificity to 'place defendants on notice of the precise misconduct with which they are charged.'" Sunset Fin. Res., Inc., v. Redevelopment Group V, LLC, 417 F. Supp. 2d 632, 644 (D.N.J. 2006). The Complaint asserts that Salhi made multiple affirmative representations that he would be able to deliver business promptly due to his connections with key clients and alleged specific allegedly fraudulent action taken to misrepresent Salhi's ability to do so. For example, PNY asserts in its Complaint that one of Salhi's colleagues acknowledged that he was instructed by Salhi to fabricate numbers to ensure that the second payment installment was issued. (Compl. at ¶¶ 49-52). This Court finds that PNY's allegations of fraud have met the burden of specificity

6

and therefore survive. The key distinction between legal and equitable fraud is that legal fraud requires proof of intent while equitable fraud does not. Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981); Liebling v. Garden State Indem., 767 A.2d 515, 518 (N.J. 2001). Therefore, as detailed above, PNY has sufficiently plead the misrepresentations on which it bases its equitable fraud claim and that PNY reasonably relied on those misrepresentations. (Compl. at ¶¶ 74-76). Therefore, Defendants' Motion to Dismiss PNY's fraud claims is denied.

**B. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing**

Defendants contend that PNY's breach of contract claim should be dismissed because PNY has not specified "the services or job duties under the Invoice that Defendants failed to perform and fails to plead the specific conduct constituting the breach." (Defs.' Br. 25). The Complaint alleges that "[t]he Invoice Agreement specifically provided that, if Salhi should be terminated by PNY 'for cause or non[-]performance of job duties on or before February 15, 2013, then all fees received under the invoice would be forfeited and repaid to PNY within six months of the termination date and no unpaid amount shall be paid." (Compl. at ¶ 32). Similarly, the "services" that Defendants were obligated to provide under the terms of the Invoice Agreement were elucidated upon to include "building a Sales and Engineering team, OEM qualification Services, [and] marketing plan (market size, technology direction, and market intelligence)." (Compl. at ¶¶ 28, 30). The Complaint alleges a variety of ways in which Defendants breached the Invoice Agreement by failing to perform the job duties and aforementioned services, among them: (1) a lack of progress made between mid-August 2011 until February 2012 in obtaining new customers in the OEM Enterprise market for PNY; (2) a failure to have a single product qualified for production by a first tier OEM company during Salhi's employment with PNY; (3) a failure to

7

have PNY'S Facility qualified by a single OEM during Salhi's employment; (4) Salhi failed to notify PNY about Dr. Fin's pending resignation; and (5) Salhi's allegedly inadequate presentation to PNY management in February 2012. (Compl. at ¶¶ 41-53). PNY further alleges that Salhi breached the Invoice Agreement by failing to return the $500,000 deposit paid to him. (Compl. at ¶ 60). PNY asserts that the above are only examples of Defendants' breaches and performances failures and additional examples will be brought forth during the discovery process. (Pl.'s Br. 26, Nov. 5, 2012, ECF No. 10). This Court finds sufficient facts have been alleged to sustain a breach of contract claim for purposes of the instant motion.

In addition, PNY has satisfied its burden to support a claim for a breach of the covenant of good faith and fair dealing. It is well established under New Jersey law that "[e]very party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 864 A.2d 387, 395 (N.J. 2005). "[A] party's performance under a contract may breach . . . [the] covenant [of good faith and fair dealing] even though that performance does not violate a pertinent express term." Wilson v. Amerada Hess Corp., 773 A.2d 1121, 1126 (N.J. 2001). However, "the duty of good faith and fair dealing cannot alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." DiCarlo v. St. Mary Hosp., 530 F.3d 255, 267 (3d Cir. 2008). The inquiry for the court as to whether a claim for a breach of implied covenant of fair dealing has been successfully asserted is "fact-sensitive" and it is difficult to "catalogue the myriad forms of conduct that may constitute a violation of the covenant of good faith and fair dealing." Brunswick Hills, 864 A.2d at 396.

Here, the Court finds that PNY has adequately alleged that Defendants violated the covenant of good faith and fair dealing. Defendants argue PNY presented no proof of bad motive or intention. (Defs.' Br. 26). However, for example, PNY specifically alleges that Salhi included false and misleading information about the OEM business during a presentation to PNY management in an effort to induce PNY to remit the second payment under the Invoice Agreement. (Compl. at ¶¶ 49-52). Additionally, PNY claims that Salhi refused to utilize other options proposed by PNY to bolster sales after it became apparent that Salhi was not performing under the terms of the Invoice Agreement. (Compl. at ¶¶ 54-55). Therefore, based on the foregoing, Defendants' Motion to Dismiss PNY's breach of contract and implied covenant of good faith and fair dealing claims is denied.

**C.    Breach of Fiduciary Duty Claim**

Under New Jersey law:

> [T]he essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position. A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship. The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care. Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship.

F.G. v. MacDonnell, 696 A.2d 697, 704 (N.J. 1997) (internal citations omitted). In the context of an employer-employee relationship, an employee has a duty not to act "contrary to the employer's interest." Lamorte Burns & Co., Inc. v. Walters, 770 A.2d 1158, 1168 (N.J. 2001).

PNY alleges that, as a PNY employee and the Chief Executive Officer of SVS, with whom PNY entered into a business arrangement to develop PNY's OEM business, Salhi was entrusted with PNY's confidential business information. (See Compl. at ¶¶ 3, 57; Pl.'s Br. 28). Salhi was

9

hired and compensated by PNY to serve as a Senior Vice President and General Manager of PNY's OEM Group and as such owed a high degree of loyalty to PNY. (Compl. at ¶ 35).

PNY alleges that Salhi breached his duty of loyalty to PNY by: (1) intentionally misrepresenting projected OEM revenues for the purpose of securing the second installment payment under the Invoice Agreement; (2) intentionally withholding material information about the plans of PNY employee's to leave the company; and (3) wiping and/or copying the contents of the laptop computer provided by PNY before returning it, when the computer allegedly contained confidential information about PNY's OEM business that could be used to compete with PNY or harm PNY's business. (Compl. at ¶¶ 47-53, 57, 80-81). For purposes of the instant motion, PNY has successfully asserted its breach of fiduciary duty claim.

### D. Computer Fraud and Abuse Act and New Jersey Computer Related Offenses Act Claims

A claim under the Computer Fraud and Abuse Act ("CFAA") § 1030(a)(4) has four elements: (1) defendant has accessed a 'protected computer;' (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so "knowingly" and with "intent to defraud;" and (4) as a result has "further[ed] the intended fraud and obtain [ed] anything of value." 18 U.S.C. § 1030(a)(4); Pacific Aerospace & Elecs., Inc. v. Taylor, 295 F. Supp. 2d 1188, 1195 (E.D. Wash. 2003)). Under the Computer-Related Offenses Act ("CROA") a defendant is liable for "purposeful[ly] and knowing[ly]" removing or destroying computer data without authorization. See N.J.S.A. 2A:38A-1, et seq.

Defendants claim that PNY's Complaint does not meet the intent requirements of the CFAA and CROA because the Complaint does not allege intent with sufficient particularity. However, intent to defraud under the CFAA and CROA is not subject to the heightened pleading

standards of Rule 9(b), but instead is subject to the notice pleadings requirements of Rule 8 (a)(2). Sealord Holdings, Inc. v. Radler, No. 11-6215, 2012 WL 707075, at *6 (E.D. Penn. Mar. 6, 2012). Here, PNY alleged that Salhi "intentionally and knowingly, without and/or in excess of his authorization, removed or destroyed PNY data that had been stored on PNY's laptop computer." (See Compl. at ¶¶ 85, 88). Additionally, PNY alleged that when Salhi returned the laptop, it had been cleared and reset to the factory settings and that, on information and belief, the laptop confidential information about PNY's business. (Compl. at ¶ 57). The pleadings sufficiently put Defendants on notice of PNY's claims and have enough factual content to survive Defendants' motion.

### E. Promissory Estoppel Claim

"Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Board of Chosen Freeholders of Burlington, 994 A.2d 1, 19 (N.J. 2008) (citing Lobiondo v. O'Callaghan, 767 A.2d 515 (N.J. Super. Ct. App. Div. 2003)).

Defendant argues that PNY cannot make out a claim for promissory estoppel because they fail to properly plead the first and third elements. (Defs.' Br. 38). First, Defendants argue that Salhi made mere expressions of future intention that do not constitute a definitive promise. (Defs.' Br. 38). Second, Defendants argue that PNYs reliance on the alleged promise was not reasonable because expressions of future intention are not sufficiently definite promises. (Defs.' Br. 38).

However, as set forth above, the alleged misrepresentations about new business and

11

contracts that Defendants could deliver to PNY, did constitute clear and definite promises. Additionally, as discussed above, PNY made a sufficient claim of reliance upon these promises. PNY also alleges that it suffered detriment in a number of ways, including the payment of salaries to Salhi and his SVS team, the $500,000 payment to Defendants, and the investment in expanding its California office.

F.  **Unjust Enrichment Claim**

To state a claim for unjust enrichment, a plaintiff must show that "defendant(s) received a benefit and that retention of that benefit without payment would be unjust." Mendez v. Avis Budget Group, Inc., No. 11-6537, 2012 WL 1224708, at *7 (D.N.J. April 10, 2012) (quoting Goldsmith v. Camden County Surrogate's Office, 408 N.J. Super. 376, 382 (App. Div. 2009)).

Defendants claim that because the alleged benefits retained by Defendants were provided for in the Invoice Agrement and Offer Letter, the claim for unjust enrichment is duplicative and thus fails as a matter of law. (See Defs.' Br. at 39). However, while a party may not recover on both theories of liability, many courts in this district have allowed a party to assert both claims in the alternative. See Association of NJ Chiropractors v. AETNA, Inc., No. 09-3761, 2012 U.S. Dist. LEXIS 64413, at *33-34 (D.N.J. May 8, 2012) (allowing the plaintiff to plead unjust enrichment and breach of contract claims in the alternative); Mendez v. Avis Budget Group, Inc., No. 11-6537, 2012 WL 1224708, at *8 (D.N.J. April 20, 2012) ("[A]t this stage of the pleadings, Plaintiff may plead alternative legal theories, but if the [contract] is found void . . ., Plaintiff may only proceed with his unjust enrichment claim. In the alternative, if a valid written contract existed on the terms Plaintiff claims, then the existence of this contract would prevent Plaintiff from recovering for quasi-contractual liability as asserted in an unjust enrichment claim."); Wells

12

Fargo Bank Northwest, N.A. v. American General Life Ins. Co., No. 10–1327, 2011 WL 1899338, at *11 (D.N.J. May 19, 2011) ("Although the gravamen of [the] complaint, even if amended, is still largely contractual, quasi-contract claims may nonetheless be pled in the alternative to contract based claims."); Simonson v. Hertz Corp., No. 10–1585, 2011 WL 1205584, at *7 (D.N.J. March 28, 2011) ("While a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts.") (citing FED. R. CIV. P. 8(d)(2); 8(d)(3)); Torres–Hernandez v. CVT Prepaid Solutions, Inc., No. 08-1057, 2008 WL 5381227, at *9 (D.N.J. Dec. 17, 2008) (unjust enrichment claim may be sustained independently as an alternative theory of recovery); MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 736 (D.N.J. 2008) ("This Court has regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature."). This Court agrees with these authorities and holds that claim for unjust enrichment would not be duplicative and thus may proceed.

### G. Punitive Damages Claim

Under N.J.S.A. 2A:15-5.12(a), "punitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions" that were "actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." See N.J.S.A. 2A:15-5.12(a). "The question of punitive damages is usually determined by the trier of fact; the Court can decide the issue only when no reasonable inference from the facts alleged supports an award of punitive damages." Eagle Traffic Control v. Addco, 889 F. Supp. 200, 201

(E.D. Pa. 1995). PNY's claims that Salhi lied about existing facts to get PNY to make the second installment payment and their allegations that he made knowingly false misrepresentations to secure a position with PNY sufficiently create reasonable inferences supporting punitive damages for purposes of the instant motion. Therefore, this factual questions will be permitted to proceed past this pre-discovery stage of the litigation.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **denied.**

Dennis M. Cavanaugh, U.S.D.J.

cc:     All Counsel of Record
        Joseph A. Dickson, U.S.M.J.
        File