**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PNY TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> LORENZO SALHI and SILICON VALLEY SOLUTIONS, INC., <br><br> Defendant. | Civil Action No.: 12-4916 <br><br> **OPINION AND ORDER** |

**INTRODUCTION**

Before the Court is the motion of Plaintiff PNY Technologies, Inc. ("PNY" or "Plaintiff") for a preliminary injunction restraining the assets of Defendant Lorenzo Salhi ("Salhi"). (ECF No. 59.) Salhi responded to the motion (ECF No. 61) and Plaintiff submitted a reply (ECF No. 64). This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court will grant the motion.

**BACKGROUND**

This case arises out of a failed business relationship between Plaintiff PNY and Defendants Salhi and his company Silicon Valley Solutions, Inc. ("SVS"). As the facts and procedural history are complex, the following is a brief recitation of only the facts necessary to decide this motion.

In or around 2011, PNY contemplated hiring Salhi and his team at SVS. (ECF No. 59-1 at 2.) The parties engaged in negotiations and appeared to have reached an agreement (the "Invoice Agreement"), whereby PNY agreed to pay SVS three installments of $500,000. (*Id.* at 3.) PNY made the initial $500,000 payment on August 17, 2011. (*Id.* at 4.)

On February 23, 2012, PNY terminated its relationship with Salhi and SVS and demanded

1

return of its $500,000 payment. (*Id.* at 5.) Rather than return the $500,000, Salhi filed suit to collect the remaining payments under the Invoice Agreement. (*Id.*) The case was tried to a California jury, who returned a verdict in favor of PNY on the basis that the Invoice Agreement was not binding because there was no meeting of the minds as to its terms. (*Id.*)

PNY then filed suit in this Court on August 6, 2012. (*Id.*) Among other claims, PNY asserts a claim for unjust enrichment based on Salhi's failure to return the $500,000 initial payment.

On August 17, 2015, PNY filed the instant motion to prevent Salhi from dissipating his assets. (*Id.* at 6.) PNY's motion was prompted by representations made by Salhi's counsel that Salhi has limited funds to pay the $500,000 even if a judgment is entered in this case. (*Id.*) PNY, however, identifies numerous pieces of evidence that indicate that Salhi has—or has recently sold—valuable assets. (*Id.*) Furthermore, PNY identifies evidence that Salhi has continued to relocate to various residences in California as well as between the United States and Dubai, which gives PNY reason to suspect he is transferring his assets so they cannot be reached to enforce a judgment. (*Id.*)

**LEGAL STANDARD**

"The grant or denial of a preliminary injunction is committed to the sound discretion of the district judge . . . ." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982). In determining whether a preliminary injunction should be issued, it is well settled that this Court must consider four factors: (1) likelihood of success on the merits; (2) irreparable harm; (3) a balance of the hardships; and (4) the public interest. *See, e.g., Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 803 (3d Cir. 1998). The Third Circuit has stated that the extraordinary relief should only be granted if the movant makes a showing on all four factors, and that a failure to establish any element renders a preliminary injunction inappropriate. *ACE Am. Ins. Co. v.*

*Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 730-31, (3d Cir. 2009) (citing *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

**DISCUSSION**

PNY brings this motion seeking to enjoin Salhi from concealing, converting, selling, transferring, or otherwise dissipating any assets, including cash, stocks, bonds, other personalty or realty which may be subject to a monetary judgment of approximately $500,000 rendered in PNY's favor. (ECF No. 59-1 at 1.) For the following reasons, the Court finds that PNY has met its burden of demonstrating it is entitled to a preliminary injunction.

**1. PNY is likely to succeed on the merits of its unjust enrichment claim.**

Under New Jersey law, a claim for unjust enrichment requires a showing that: (1) the defendant received a benefit from the plaintiff; (2) that the retention of the benefit would be unjust; and (3) that the plaintiff expected remuneration from the defendants at the time it performed or conferred a benefit. *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994); *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).

It is undisputed that PNY paid Defendants $500,000 (ECF No. 61 at 2) and that the money has not been returned. A California jury has already determined that the Invoice Agreement is unenforceable because there was no meeting of the minds. (ECF No. 64 at 4.) Salhi concedes that the judgment entered in the California court is to be given full faith and credit in this Court. (ECF No. 61 at 11-14.) Accordingly, it would be unjust for Salhi to keep the money. *See Big M, Inc. v. Dryden Advisory Group*, No. 08-3567, 2009 U.S. Dist. LEXIS 55423, at *82-93 (D.N.J. June 30, 2009) (finding that where there was no meeting of the minds, the remedy is to restore the parties to their original positions, including restitution to the plaintiff "in the amount by which the defendant has been enriched"). Finally, it appears to be undisputed that the $500,000 payment was made by PNY with the expectation that services would be provided. (ECF No. 61 at 2.)

Accordingly, looking only at the undisputed facts, PNY is likely to succeed on the merits of its unjust enrichment claim.

### 2. PNY will be irreparably harmed if Salhi is not enjoined from dissipating his assets.

The purpose of a preliminary injunction is to maintain the status quo during the pendency of a litigation. *See Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940). It is well-established that a court may freeze a defendant's assets to preserve an ultimate equitable remedy sought by a plaintiff. *Deckert*, 311 U.S. at 289-90 (upholding prejudgment asset freeze in case seeking equitable remedies including rescission and the return of disputed funds); *Elliott v. Kiesewetter*, 98 F.3d 47, 58 (3d Cir. 1996); *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994) (asset freeze granted where plaintiff demonstrated a likelihood of success on its unjust enrichment claim); *Sweet People Apparel, Inc. v. Fame of NY, Inc.*, No. 11-1666, 2011 WL 2937360, at *5 (D.N.J. July 19, 2011) ("[C]ourts have repeatedly upheld the use of prejudgment asset freezes in cases seeking equitable relief.").

Obviously, if it is true that Salhi is attempting to make himself judgment-proof by dissipating and transferring his assets domestically and overseas, then PNY will be irreparably harmed. *See Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 206 (3d Cir. 1990) (concluding that "the unsatisfiability of a money judgment can constitute irreparable harm"). The only question is whether there is sufficient evidence that Salhi is, in fact, doing that. Salhi asserts that he is not, characterizing PNY's contentions as mere "suspicions." (ECF No. 61 at 8.) The record, however, reflects a different story.

In connection with the California litigation, Salhi was deposed in November 2013. (ECF No. 64-2.) Additionally, on September 18, 2015 (between the filing of Defendants' opposition brief and PNY's reply brief), PNY deposed Salhi on matters related to this motion. (ECF No. 64-3.) Salhi's sworn statements demonstrate sufficient evidence that PNY will be irreparably

harmed if steps are not taken to prevent Salhi from dissipating his assets.

It is unclear from the record where Salhi is currently living. Salhi contends that he is currently living in California. (ECF No. 61 at 8-9.) However, in his September 2015 deposition, he was unable to identify a specific residence, testifying that he was "in between homes" and he "live[s] with family members and . . . so on and so forth." (ECF No. 64-3.) He identified three separate addresses where he has resided, as well as a mailing address where "he get[s his] mail just in case [he is] moving around." (*Id.*) Salhi further stated that he is "not exactly sure who owns" the residences. (*Id.*) Moreover, as recently as November 2013, he testified under oath that he was living in Dubai at the time. (ECF No. 64-2.) On this record, PNY has a legitimate concern that Salhi can transfer money out of the country and flee at a moment's notice if judgment is rendered against him.

More importantly, Salhi has already represented to PNY that he does not have the money to pay if a judgment issues against him in this case. (*Id.*) But the record reflects that Salhi has earned large amounts of money and has recently been in possession of substantial amounts of money and valuable assets. (*Id.*) Salhi has spent more than $6 million in the last six years and more than $1 million in the five months preceding the filing of this motion. (*Id.*) He recently sold a $3.7 million house and testified that he cleared $1 million on the sale. (*Id.*) His representation that he has spent all his money is further evidence that PNY will suffer irreparable harm if the Court does not step in and prevent Salhi from dissipating what he has left. *See Hoxworth*, 903 F.2d at 206

### 3. The balance of hardships and public interest favor PNY.

Restraining Salhi's assets is not a step this Court takes lightly. However, any hardship caused by the temporary restrictions placed on Salhi is far outweighed by the $500,000 worth of harm PNY faces if Salhi has no money to pay a judgment. This is particularly true in light of

5

Salhi's admission that he has no money because he "had a good lifestyle" and he "spent it all." (ECF No. 64-3.) It is not in the public interest to allow defendants to make themselves judgment-proof.

## CONCLUSION

Having reviewed the submissions of the parties, the Court finds that the record reflects a need for emergent relief by way of a Preliminary Injunction restraining Defendant Salhi's assets. Accordingly,

**IT IS** on this 10 day of August, 2016,

**ORDERED** that Plaintiff's Motion for a Preliminary Injunction (ECF No. 59) is **GRANTED**; and it is further

**ORDERED** that Defendants are hereby **PRELIMINARILY ENJOINED** from concealing, converting, selling, transferring, or otherwise dissipating any assets which may be subject to a monetary judgment of up to $500,000 rendered in favor of PNY; and it is further

**ORDERED** that Defendants are hereby **PRELIMINARILY ENJOINED** from transferring any funds outside the ordinary course of business and from transferring any funds outside of the United States until the conclusion of this action; and it is further

**ORDERED** that this preliminary injunction shall remain in effect until all issues relating to this litigation have been resolved.

**SO ORDERED.**

_____
CLAIRE C. CECCHI, U.S.D.J.